HEALY & BAILLIE, LLP
A limited liability partnership
formed in the State of New York
Attorneys for Plaintiffs
61 Broadway, 32nd Floor
New York, NY 10006
(212) 943-3980
Jack A. Greenbaum (JB-0039)
Jeremy J.O. Harwood (JH-9012)
John C. Koster (JK-4086)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDORRA SERVICES INC. and CHEMOIL CORP., <br><br> Plaintiffs, <br><br> - against - <br><br> M/T EOS, its engines, boiler, tackle, etc., *in rem*, <br><br> Defendant. | Civil Action No. 06- 373 WJM <br><br> **VERIFIED COMPLAINT** |

Plaintiffs, ANDORRA SERVICES INC. and CHEMOIL CORP., (collectively "Plaintiffs"), by its attorneys, Healy & Baillie, LLP, complaining of the above-named defendant, allege upon information and belief:

1. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

## THE PARTIES

2.   At all material times, Plaintiff Chemoil Corp. ("Chemoil") was and now is a U.S. corporation with an office and place of business at Four Embarcadero Center, Suite 1100, San Francisco, CA 94111, and is engaged in business, inter alia, of the purchase and sale of petroleum and bunkers.

3.   At all material times Andorra Services Inc. ("Andorra") was a corporation incorporated in the British Virgin Islands.

4.   At all material times, Defendant, M/T EOS ("EOS" or "Vessel"), was an ocean going tanker, official number 21101-93D, whose registered owner is Venfleet Products, with an office and place of business care of the Vessel's manager, Hanseatic Shipping, in Cyprus ("Owner").

5.   Defendant M/T EOS is a Panamanian-flagged Vessel and is now or will be during the pendency of this action located within this district.

## AS AND FOR PLAINTIFFS' IN REM ACTION AGAINST THE VESSEL

6.   On information and belief Owner entered into a contract of charter party on or about December 19, 2005 with Andorra which was amended by "Addendum No. 1" dated December 21, 2005 to nominate the Vessel as the performing vessel (the "Charter").

7.   The Charter provides, in material part:

> Vessel to maintain loaded temp[erature] up to 135F, max loading temp 150F.

* * *

L.26   CARGO HEATING

Owners warrant that the vessel is fully fitted with heating coils in all cargo tanks and agrees to instruct the Master to maintain the cargo at loaded temperature, if required by Charterer, up to the maximum temperature of . . .° Cels. (....° Fah.). If the vessel fails to maintain the temperature required, the Owner shall be responsible for any resulting [direct] delay and [direct] time lost thereby shall not count as used laytime or time on demurrage, even if Vessel is already on demurrage.

Should it become necessary to withdraw Vessel from berth because of Owner's failure to maintain the required temperature, all [direct] time and expenses to be for Owner's account.

8.   On or about December 21, 2005 the Vessel loaded 86,085.86 m.t. of fuel oil at Amuay Bay, Venezuela at a temperature in excess of 120° (the "Cargo").

9.   The Master of the Vessel issued a single bill of lading for the Cargo dated December 31, 2005 (the "Bill of Lading").

10.   Chemoil is the holder in due course of the Bill of Lading and brings this action on its own behalf and as agent and trustee on behalf of the consignees, receivers, Cargo underwriters, and others whose interests may ultimately appear in the Cargo and/or Bill of Lading ("Cargo Interests").

11.   On or about January 9, 2006, while the Vessel was discharging the Cargo at the IMTT Bayonne Terminal it was discovered that the Vessel's tank heating coils, which are necessary to heat the Cargo to permit discharge and in respect of which the Vessel was expressly warranted under the terms of the Charter as above, were broken,

inoperative and otherwise leaking water into the Cargo in some or all of the Vessel's tanks.

12. The Vessel, having discharged some 300,000 barrels, ceased discharge with some 200,000 barrels of the Cargo remaining on board.

13. The Vessel has been held out of her berth pending Owner's repair of the Vessel's heating coils and restoration of the ability to perform Cargo operations in accordance with the warranties of the Charter and as required by the IMTT Terminal.

14. The Cargo discharged of approximately 300,000 barrels was contaminated by water by the Vessel's leaking heating coils causing mitigation expenses and other damages.

15. The Cargo remaining on board of approximately 200,000 barrels has likewise been contaminated and unless the Vessel can comply with the Charter requirements may be incapable of discharge resulting in a total loss of that amount (the "ROB Cargo").

16. Alternatively, even if the ROB Cargo is capable of discharge it has also been contaminated by water requiring mitigation expenses and other damages.

17. By reason of the foregoing, Plaintiffs have and/or will sustain damages in the amount of $6,000,000 (six million dollars), plus interest, attorneys' fees and costs for a total of $7,000,000 (seven million dollars) as fairly stated and as may presently be reasonably estimated.

18. Plaintiff Chemoil and Cargo Interests have a maritime lien against the Vessel for the full amount of said damages.

19.  Plaintiff Andorra likewise has a maritime lien against the Vessel for breach of the Charter in respect of any indemnity claims that may be brought against it by Chemoil and/or Cargo Interests.

20.  The Charter provides in its "Law and Litigation" clause that any disputes under it are subject to U.S. law and the jurisdiction of the U.S. District Court for the Southern District of New York. The Charter also provides for a right of election of New York arbitration, without prejudice to "any parties right to arrest or maintain the arrest of any maritime property ...".

21.  This action is filed in rem without prejudice and expressly under Plaintiffs' rights under the "Law and Litigation" clause in the Charter.

WHEREFORE, Plaintiffs pray:

1.  That process in rem pursuant to Rules C of the Supplemental Rules for Certain Admiralty and Maritime Claims may issue against the M/T EOS, her engines, boilers, tackle, etc., and freights placing the M/T EOS under the custody and control of the Marshal of this District, and that all persons claiming any right, title or interest in the said Vessel be cited to appear and answer, under oath, all and singular the matters aforesaid, and that the Vessel may be condemned and sold to pay the amount due Plaintiffs in the amount of $7,000,000 plus interest, costs and attorneys' fees.

2.  That the claim of Plaintiffs be judged to be a maritime lien on said Vessel and its freights.

3.  That Plaintiffs have judgment together with interest, costs and attorneys' fees.

4. That the Court grant Plaintiffs such other and further relief as may be just and proper under the premises.

Dated:   New York, New York
         January 26, 2006

>                     HEALY & BAILLIE, LLP
>                     A limited liability partnership
>                     formed in the State of New York
>                     Attorneys for Plaintiffs
>
>                     By: _____
>                     Jack A. Greenbaum (JG 0039)
>                     Jeremy J.O. Harwood (JH 9012)
>                     John C. Koster (JK-4086)
>                     A Member of the Firm
>                     61 Broadway, 32nd Floor
>                     New York, New York 10006
>                     (212) 943-3980

295894.1

6

# VERIFICATION

STATE OF NEW YORK       )
                        : ss.:
COUNTY OF NEW YORK      )

Jack A. Greenbaum verifies the following:

1. I am a member of the bar of this Honorable Court and am a member of the law firm of Healy & Baillie, LLP, attorneys for Plaintiffs herein. I have read the foregoing Verified Complaint and know the contents thereof and believe the same are true to the best of my own knowledge, information and belief.

2. The sources of my knowledge, information and belief are derived from statements made by Plaintiffs' representatives and documents furnished to this firm by Plaintiffs' representatives.

3. The reason that this Verification is made by me and not by Plaintiffs is that Plaintiffs are an entity, no officers or directors of which are now within this District. I am authorized to make this Verification on behalf of Plaintiffs.

_____
Jack A. Greenbaum

Sworn to before me this
26th day of January, 2006.

_____
Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126. Qual. in Nassau Cty.
Certificate Filed in New York County
Comm. Expires Nov. 30, 2009