NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANDORRA SERVICES INC.** and **CHEMOIL CORP.** | Civil Action No. 06-cv-373 (PGS) |
| Plaintiffs, | |
| v. | **OPINION** |
| M/T EOS, its engines, boiler, tackle, etc. *in rem*, | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on two motions ordered by the magistrate to be filed as cross-motions. Plaintiffs, Andorra Services, Inc. ("Andorra") and Chemoil Corp. ("Chemoil")(collectively referred to as "plaintiffs") have moved for a voluntary dismissal and permission to return the security, in the form of a letter of understanding ("LOU"), to the defendants. Meanwhile, Venfleet, the owner of the defendant vessel M/T EOS ("the vessel")(collectively referred to as defendants) has moved to make a general appearance and for leave to amend so as to assert counterclaims and request counter-security. For the reasons stated herein, the Court will deny the plaintiffs' motion for a voluntary dismissal, grant defendants' motion to amend and assert counterclaims, stay proceedings, and leave the issue of security, counter-security, and return of the LOU to be determined by the arbitrator.

I.

On December 19, 2005, Venfleet, a government owned Venezuelan company and owner of the vessel M/T EOS, entered into a contract of charter party with Andorra, a corporation of the

British Virgin Islands, to ship fuel oil from Amuay Bay, Venezuela to the International-Matex Tanks Terminal (IMTT) in Bayonne, New Jersey. Chemoil, a corporation of the State of California, is the holder in due course of the single bill of lading issued for the cargo. The charter includes a "Law and Litigation" clause which provides that any disputes are subject to U.S. law and the jurisdiction of the U.S. District Court for the Southern District of New York. The clause further provides a right of election of New York arbitration with an exception for "arrest" of property.

On December 21, 2005, the vessel was loaded with 86,085 m.t. (approximately 549,000 barrels) of fuel oil at a temperature in excess of 120 degrees. In order to maintain the necessary temperature, the vessel was equipped with heating coils. When the vessel arrived at the IMTT Bayonne Terminal, on January 9, 2006, it was discovered that the vessel's tank heating coils were broken, inoperable, and leaking, contaminating the cargo and causing damage. Approximately 350,000 barrels of the 550,000 barrel freight was unloaded before the vessel was ordered to cease discharge and move out of the berth. On or about January 28, 2006, the vessel returned to the berth and discharged the remainder of the cargo. Upon discharge of the full cargo, plaintiffs failed to pay the freight which was immediately due at that time.

On January 26, 2006, plaintiffs filed an In Rem Complaint against the defendant vessel, obtaining a Summons and Warrant for Arrest of the vessel. So as to avoid arrest of the vessel, an LOU was provided to plaintiffs from the vessel's protection and indemnity cargo insurer to secure plaintiffs' lien and claim.

II.

While the parties have agreed to settle their disputes through arbitration, one final issue has been presented to the Court which needs to be settled prior to sending the matter for resolution

before a New York arbitrator.[1] Muddled in procedural motions and Supplemental Rules for Certain Admiralty and Maritime Claims, one controversy remains. In light of the security provided to plaintiffs, defendants seek to proceed to arbitration being adequately secured. To accomplish this, Venfleet, as owner of the vessel, seeks to amend its Answer to make a general appearance[2], assert counterclaims, and request counter-security pursuant to Supplemental Rule E(7). Apparently not wanting to provide any such counter-security, plaintiffs propose to proceed to arbitration with no party providing any security. In order to do so, plaintiffs have moved to dismiss its Complaint and requests permission to return the LOU provided by defendants.

III.

Pursuant to Fed. R. Civ. P. 15(a), once a pleading, to which no responsive pleading is permitted, is served, that pleading may be amended within 20 days of service. Thereafter, amendments are permitted only by leave of court or by written consent of the adverse party. Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A general presumption exists in favor of allowing a party to amend its pleadings. See *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing

---

[1] The parties acknowledge that the arbitrator, Jack Berg, is a prominent and respected arbitrator in maritime disputes.

[2] Supplemental Rule E(8) for Certain Admiralty and Maritime Claims provides: "An appearance to defend against an admiralty and maritime claim with respect to which there has issued...process of attachment and garnishment...may be expressly restricted to the defense of such claim, and in that event shall not constitute an appearance for the purposes of any other claim with respect to which such process is not available or has not been served." Venfleet initially made a restricted appearance and now seeks to make a general appearance and submit to the jurisdiction of the Court.

party would not suffer undue prejudice. See *Foman*, 371 U.S. at 182; *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). "[A] refusal of a motion for leave to amend must be justified." *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995). The Third Circuit has identified the following as permissible justifications for denying a motion to amend: "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." *Id.* at 90 (citing *Foman*, 371 U.S. at 182)).

Plaintiffs argue that Venfleet's prior assertion of a restricted appearance was not a "technical defect," but rather a tactical decision so that plaintiffs could not assert jurisdiction over Venfleet personally. It is claimed that only upon realization that the plaintiffs' damages were substantially less that the $7 million originally claimed, and outweighed by the potential counterclaims, initially asserted as affirmative defenses, did Venfleet seek to make a general appearance *in personam*. Thus it appears that plaintiffs argue that Venfleet should be required to proceed with its initial, allegedly deliberate choice of a restricted appearance.

Plaintiffs, however, have cited to no case law, Federal Rule, or Supplemental Rule that would "lock-in" Venfleet to the appearance first asserted. The liberal pleading requirements and presumption in favor of allowing amendments compel the Court to permit Venfleet to amend, make a general appearance *in personam* and assert its counterclaims.

IV.

Addressing next plaintiffs' motion to voluntarily dismiss the Complaint, the plaintiffs appeal to the discretionary powers of the Court as set forth in Fed. R. Civ. P. 41(a)(2), which provides:

> By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the

> plaintiff's motion to dismiss, the action shall not be dismissed against
> the defendant's objection unless the counterclaim can remain pending
> for independent adjudication by the court. Unless otherwise specified
> in the order, a dismissal under this paragraph is without prejudice.

The district court has broad discretion in deciding whether to grant a motion for voluntary dismissal. *In re Diet Drugs Products Liability Litigation*, 85 Fed. Appx. 845, 847 (3d Cir. 2004) (citing *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974)). A court should grant a plaintiff's motion for voluntary dismissal unless the dismissal will result in substantial prejudice to the defendant. *DuToit v. Strategic Minerals Corp.*, 136 F.R.D. 82, 85 (D.Del. 1991) (citing *In re Paoli R.R. Litigation*, 916 F.2d 829, 863 (3d Cir. 1990)).

In assessing whether the prejudice is substantial, the Court must examine the circumstances of the case and "weigh the relevant equities..." *Barron v. Caterpillar, Inc.*, 1996 WL 460086 at *2 (E.D.Pa. Aug.7, 1996). The plain legal prejudice required to deny a motion pursuant to Rule 41(a)(2) must be more than the prospect of a second lawsuit or tactical advantage. See *Shulley v. Mileur*, 115 F.R.D. 50, 51 (M.D.Pa.1987) ("dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit") (citations omitted).

As stated in Fed. R. Civ. P. 41(a)(2), "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."[3] "If the counterclaim is compulsory, it is settled that the court has ancillary jurisdiction (and now supplemental jurisdiction under Section 1367 of Title 28)

---

[3] Considering that the parties filed the motions for voluntary dismissal and for leave to amend to assert counterclaims simultaneously pursuant to the orders of the magistrate, the Court will deem the defendants' counterclaims timely pled.

to decide it even though the plaintiff's claim is dismissed." 9 Wright and Miller, *Federal Practice and Procedure* §2365; see also *Buttram v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 781 F.Supp. 1429 (E.D.Mo. 1992); *Bosteve Ltd. v. Marauszwki*, 110 F.R.D. 257 (E.D.N.Y. 1986); *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186 (E.D.Pa. 1982); *Vieser v. Harvey Estes Const. Co.*, 69 F.R.D. 370 (W.D.Okla. 1975); *Angelucci v. Continental Radiant Glass Heating Corp.*, 51 F.R.D. 314 (E.D.Pa.1971). Defendants freely admit that its counterclaims are compulsory.[4] Thus, even if the Court were to permit the plaintiffs to voluntarily dismiss its Complaint, the Court would retain jurisdiction over the counterclaims and the plaintiffs.

However, the Court is not inclined, at this time, to exercise its discretion and dismiss the plaintiffs' Complaint. From a judicial efficiency perspective, it is better to keep all the claims intact in order to prevent more procedural motions in the future, if for some reason the arbitration fails. As addressed in further detail below, the Court will also not rule on the issues of security and counter-security. Rather, considering that the parties have agreed to arbitration, and further, agree that the matter of security and counter-security is an arbitrable issue, the Court will allow the matter to proceed by way of arbitration, leaving the issue of security to be decided by the arbitrator. As a means of protecting the interests of the plaintiffs, the Court will deny the plaintiffs' motion for a voluntary dismissal, so that if the arbitrator declines to rule on this issue of security, either party can return to this Court and make the appropriate application.

Therefore, plaintiffs' motion for a voluntary dismissal is denied.

---

[4] If the claims are not compulsory, defendants cannot request counter-security under Supplemental Rule E(7) which requires the counterclaim to "arise from the transaction or occurrence that is the subject of the original action," which mirrors that language of Fed. R. Civ. P. 13(a) governing compulsory counterclaims.

## V.

In this case, Venfleet has put forward some proof that Andorra is a shell corporation without assets and unless counter-security is in place it may obtain nothing more than a "paper judgment." However, as indicated, the Court declines to rule on the issue of security and, therefore, denies the plaintiffs' request to return the LOU and the defendants' motion for counter-security. In plaintiffs' brief in opposition to the motion for counter-security, plaintiffs cite to an article by J.D. Kimball, *Time Charters*, at 461 (4th ed. 1995), under the section entitled "Power of arbitrators to award security," where it is stated:

> It is beyond dispute that arbitrators have the power to order parties to post security. Judicial recognition of the broad grant of equitable powers enjoyed by commercial arbitrators originated with *Spring International Trade Inc. v. Government of Israel*, 689 F.2d 301 (2d Cir. 1982), where the Second Circuit affirmed the arbitrators' order requiring the proceeds of a disputed $15 million letter of credit be placed in escrow, noting that arbitrators "have power to fashion relief that a court might not properly grant. *Id.* at 306.

Moreover, at oral argument, both parties agreed that a determination of whether security and counter-security is appropriate is within the arbitrator's jurisdiction. The parties entered into a binding agreement to arbitrate their disputes and the Court believes that this issue would best be left to an arbitrator who is well versed in maritime law and can be presented with and create a factual record, as needed, to make such a determination.

The Court will therefore stay proceedings in the District Court, sending the matter to arbitration, leaving the issue of security to be decided by the arbitrator. However, should the arbitrator fail to render a ruling on the issues of security and/or counter-security or find that the issue is beyond the arbitrator's jurisdiction, either party may make an application before this Court for a determination.

October 18, 2006

PETER G. SHERIDAN, U.S.D.J.