8726/JMT
CICHANOWICZ, CALLAN, KEANE,
VENGROW & TEXTOR, LLP
61 Broadway, Suite 3000
New York, New York 10006
Attorneys for Co- Defendant Venfleet, Inc. *in personam*
and the MV EOS, *in rem*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDORRA SERVICES INC. and CHEMOIL, CORP., | **ECF CASE** |
| Plaintiffs, | **06 Civ. 373 (PGS-ES)** |
| - against - | **AS PER LOCAL RULES, DEFENDANTS REQUEST ORAL ARGUMENT** |
| VENFLEET, LTD., *in personam* and M/V EOS, its engines, boiler, tackle, etc. *in rem,* | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW SUBMITTED BY VENFLEET, LTD IN
PERSONAM AND THE M/T EOS IN REM IN SUPPORT OF THEIR
MOTION TO CONFIRM A FINAL ARBITRATION AWARD
AND FOR ENTRY OF JUDGMENT AGAINST PLAINTIFFS AND IN
OPPOSITION TO PLAINTIFFS CROSS MOTION TO
VACATE AND/OR MODIFY**

**Of Counsel:**

   **James M. Textor**

# TABLE OF CONTENTS

*Page*

1      PRELIMINARY STATEMENT

2      ARGUMENT

2      I.    FAA SECTIONS 10 AND 11 PROVISIONS ARE THE EXCLUSIVE GROUNDS TO VACATE/MODIFY AN ARBITRATION AWARD

6      II.   MANIFEST DISREGARD OF LAW/PUBLIC POLICY

6      Manifest Disregard of Law

9      Public Policy

10     III   FAA SECTION 10 CIRCUMSTANCES FOR VACATUR

10     Arbitrator Bias/Evident Partiality

13     Panel Exceeded its Authority

19     CONCLUSION

## TABLE OF AUTHORITIES

*Page*          *Cases*

5               <u>ALS</u> & <u>Associates</u>, <u>Inc.</u> v. <u>AGM</u> <u>Marine</u> <u>Constructors</u>, <u>Inc.</u> 557 F. Supp.
                2d 180 (D. Mass. 2008)

5               <u>Ascension</u> <u>Orthopedics</u>, <u>Inc.</u> v. <u>Curasan</u>, <u>AG</u>, 2008 WL 2074058 (S.D.
                Tex. 2008)

6               <u>Bricklayers</u> <u>and</u> <u>Allied</u> <u>Craftworkers</u> <u>Intern</u>. v. <u>Jocanz</u>, <u>Inc.,</u>  2007 WL
                1876508 (D.N.J. 2007)

1, 2, 4, 5, 6   <u>Hall</u> <u>St.</u> v. <u>Mattel</u>, <u>Inc.</u> _____ U.S. _____ , 128 S. Ct. 1396, 170 L. Ed. 2d
                254 (2008)

15              <u>In re IMC Maritime Group v. Russian Farm Community</u>, 2004 WL
                2914099 (S.D.N.Y.)

11              <u>Kaplan</u> v. <u>First</u> <u>Options</u> <u>of</u> <u>Chicago</u>, <u>Inc.</u> 19 F. 3d 1503 (3rd Cir. 1994)

11              <u>Lourdes</u> <u>Medical</u> <u>Center</u> v. <u>Jneso</u>, 2007 WL 1040961 (D.N.J. 2007)

15, 16          <u>Major</u> <u>League</u> <u>Umpires</u> <u>Assoc.</u> v. <u>American</u> <u>League</u> <u>of</u> <u>Professional</u>
                <u>Baseball</u> <u>Clubs</u>, 357 F. 3d 272 (3rd Cir. 2004)

8               <u>Merrill</u> <u>Lynch</u>, <u>Pierce</u>, <u>Fenner</u> & <u>Smith</u> v. <u>Bobker</u>, 808 F. 2d 930 (2nd Cir.
                1986)

11              <u>Merrill</u> <u>Lynch</u> <u>Pierce</u> <u>Fenner</u> & <u>Smith</u> v. <u>Clemente</u>, 2008 WL 857756  (3rd
                Cir. 2008)

6               <u>News</u> <u>America</u> <u>Pub.</u> <u>Inc.</u> v. <u>Newark</u> <u>Typographic</u> <u>Union</u>, 918 F. 2d 21 (3rd
                Cir. 1990)

6               <u>New</u> <u>Jersey</u> <u>Building</u> <u>Laborers</u> <u>Statewide</u> <u>Benefit</u> <u>Funds</u>, v. <u>Danmar</u>
                <u>Contractors</u>, 2007 WL 316577 (D.N.J. 2007)

5               <u>Prime</u> <u>Thereapeutics</u> <u>LLC</u> v. <u>Omnicare</u>, <u>Inc.</u>, 555 F. Supp. 2d 993 (D.
                Minn. 2008)

5               <u>Ramos</u> – <u>Santiago</u> v. <u>United</u> <u>Parcel</u> <u>Serv.</u>, 2008 WL 1822430 (1st Cir.
                2008)

5          Redish v. Yellow Transportation, Inc., 2008 WL 2572658 (N.D. Tex. 2008)

4          Robert Lewis Rosen v. Webb, 2008 WL 2662015 (S.D.N.Y. 2008)

5, 9, 16   Southco, Inc. v. Reell Precision Manuf Corp., 556 F. Supp. 2d 505 (E.D. Pa. 2008)

12         Transmarine Seaways Corp. of Monrovia v. Marc Rich & Co., A.G., 480 F.Supp. 352 (S.D.N.Y. 1979)

9          United Transp. Union Local v. Suburban Transp. Corp., 51 F. 3d 376, (3rd Cir. 1995)

7          Wallace v. Buttar 378 F. 3d 182 (2nd Cir. 2004)

5          Wood v. Penntex Resources LP, 2008 WL 2609319 (S.D. Tex. 2008)


Page       Statutes

1, 2, 9, 13   Federal Arbitration Act ("FAA") 9 U.S.C. §§ 10 and 11
16

## PRELIMINARY STATEMENT

We have read with interest the Plaintiff's Cross Motion, dated August 22, 2008, and note the Plaintiffs statutory and non- statutory contentions for vacatur and/or modification.

As a very cursory response, we consider the allegations of arbitrator misconduct described as "bias", to be very disturbing. Attorneys for the parties jointly selected Mr. Berg who is a full time SMA maritime arbitrator, very experienced, and well known to the New York/New Jersey maritime bar and by many of the SDNY Federal District Judges who have handled matters associated with New York maritime arbitration. Mr. Berg made two (2) separate written disclosures which Plaintiffs accepted. Although the hearings were at times contentious, Mr. Berg scheduled many substantive and non-substantive hearings (compel production and scheduling) as requested by counsel, and conducted the hearings in a very professional manner. Both sets of attorneys for Plaintiffs conveyed many requests for extensions for many previously agreed/scheduled tasks. Mr. Berg extended all professional courtesies.

Further, the Cross Motion contains many factual errors, mis-statements and legal errors which Defendants will challenge. The most glaring is the legal reference to non-statutory grounds to vacate a final arbitration award. Last Spring, the U.S. Supreme Court in Hall St. v. Mattel, Inc. _____ U.S. _____, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) issued a ruling mandating that Federal Arbitration Act ("FAA") 9 U.S.C. §§ 10 and 11 are the exclusive grounds for judicial review of an arbitration award. Further, based on the many subsequent District Court opinions applying Hall St. supra, the non-statutory grounds, i.e., public policy, manifest disregard of the law, are now eliminated as grounds to vacate

1

and/or to modify an arbitration award. For the maritime attorneys who handle charter party transportation contract disputes in maritime arbitration, this is now common knowledge.

Finally, we do not understand Plaintiffs extensive submission of arbitration witness transcript testimony. FAA does not allow an appeal of a final arbitration award on its factual merits. Under the FAA, the Court has no jurisdiction to evaluate whether the Panel's award is correct or incorrect including the factual submissions and witness testimony. Plaintiffs have no right to appeal the Final Award as it was a trial. If there are no 9 U.S.C. § § 10 and 11 legal grounds to vacate or modify and there are no such grounds, the Court must confirm the Final Award, dated June 5, 2008.

## POINT I

### FAA SECTIONS 10 AND 11 PROVISIONS ARE THE EXCLUSIVE GROUNDS TO VACATE/MODIFY AN ARBITRATION AWARD

The Plaintiff Cross Motion Memorandum at page 5, states that in addition to FAA, 9 U.S.C. Section 10 specific statutory grounds to vacate an Award, the Third Circuit recognizes three (3) additional non-statutory grounds including (1) manifest disregard of the law, (2) no justification in any rational way, and (3) violates public policy. Plaintiffs' reference to FAA Section 10 for the grounds to vacate is correct, but the reference to the non-statutory grounds is legally wrong. Non-statutory also know as common law grounds to vacate are no longer good law.

On March 25, 2008, the U.S. Supreme Court in <u>Hall</u> <u>St.</u> supra in a 6 to 3 decision ruled that the FAA Section 10 and 11 are the exclusive statutory grounds for judicial review to

2

vacate or modify an arbitration award, and the Court rejected any argument that the parties could provide in the agreed arbitration clause for additional or different grounds for the District Court to review to vacate or modify. Mr. Justice Souter for the majority opinion stated, in relevant part, as follows:

> The Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.,* provides for expedited judicial review to confirm, vacate, or modify arbitration awards. §§ 9-11 (2000 ed. and Supp.V). The question here is whether statutory grounds for prompt vacatur modification may be supplemented by contract. We hold that the statutory grounds are exclusive.

> The Act also supplies mechanisms for enforcing arbitration awards; a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. §§ 9-11. An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court. § 6. Under the terms of § 9, a court "must" confirm an arbitration on award "unless" it is vacated, modified, or corrected "as prescribed" in §§ 10 and 11. Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one.

> The Courts of Appeals have split over the exclusiveness of these statutory grounds when parties take the FAA shortcut to confirm, vacate, or modify an award, with some saying the recitations are exclusive, and others regarding them as mere threshold provisions open to expansion by agreement. As mentioned already, when this litigation started, the Ninth Circuit was on the threshold side of the split, see *LaPine,* 130 F. 3d, at 889 from which it later departed en banc in favor of the exclusivity view, see *Kyocera,* 341 F. 3d, at 1000, which it followed in this case, see 113 Fed. Appx., at 273. We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification.

> Instead of fighting the text, it make more sense to see the three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens

3

the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' *Kyocera*, 341 F. 3d, at 998; cf. *Ethyl Corp. v. United Steelworkers of America*, 768 F. 2d 180, 184 (C.A. 7 1987), and bring arbitration theory to grief in post-arbitration process, Hall St. supra at pages 1400, 1402-1403 and 1405.

Most recently, on July 7, 2008, for a motion to vacate a New York arbitration award, Judge Howell in Southern District of New York in Robert Lewis Rosen v. Webb, 2008 WL 2662015*4 (S.D.N.Y. 2008) cited Hall St. and in response to non-statutory grounds to vacate, the District Court stated, as follows:

Having held that *Wilko* did not control its determination, the Court then turned to petitioner's claim that the general policy behind the FAA suggested that parties be permitted to supplement the statutory grounds for vacatur. The Court held that 'expanding the detailed categories [for modification and vacatur contained in §§ 10 and 11] would rub too much against the grain of the § 9 language where provision for judicial confirmation carries no hint of flexibility.' *Id* at 1405. Analyzing § 9, the Court found that '[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation, except when one of the 'prescribed' exceptions applies.' *Id*

Necessary to *Hall Street's* holding are two related propositions: first, that the FAA's statutory grounds are exclusive, and second, that the Supreme Court has never endorsed manifest disregard as an independent basis for vacatur. Together, these propositions undercut the rationale for the Second Circuit's prior adherence to the manifest disregard standard. *See Wojchowski v. Dairies,* 498 F. 3d 99, 106 (2d Cir. 2007) (affirming district court's holding that the Second Circuit's otherwise controlling decisions had been overruled as they were based on a statutory interpretation that was inconsistent with an intervening decision of the Supreme Court). As the Second Circuit's traditional understanding of Wilko and § 10 that *Wilko* endorsed manifest disregard and that § 10's grounds are not exclusive is inconsistent with the basis for the holding in

4

> *Hall Street,* the Court finds that the manifest disregard of
> the law standard is no longer good law.

To date, we have not found a decision in the Third Circuit which cites <u>Hall St.</u> supra and non-statutory grounds for vacatur and/or modification. In <u>Southco, Inc.</u> v. <u>Reell Precision Manuf Corp.</u>, 556 F. Supp. 2d 505, 508 (E.D. Pa. 2008), for a motion to vacate based on an allegation that the AAA Panel exceeding the scope of its authority, the District Court for the Eastern District of Pennsylvania did cite <u>Hall St.</u> supra, but did not discuss non-statutory grounds which were apparently not alleged.

At the Circuit level, on April 24, 2008, the U.S. Court of Appeals for the First Circuit in <u>Ramos</u> – <u>Santiago</u> v. <u>United Parcel Serv.</u>, 2008 WL 1822430, at * 2 n. 3 (1st Cir. 2008) interpreted <u>Hall St.</u> supra to say "that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the FAA." At the District Court level, we cite to a few very recent post <u>Hall St.</u> supra. nationwide District Court decisions, <u>Ascension Orthopedics, Inc.</u> v. <u>Curasan, AG</u>, 2008 WL 2074058 (S.D. Tex. 2008), <u>Prime Thereapeutics LLC</u> v. <u>Omnicare, Inc.</u>, 555 F. Supp. 2d 993 (D. Minn. 2008), <u>ALS</u> & <u>Associates, Inc.</u> v. <u>AGM Marine Constructors, Inc.</u> 557 F. Supp. 2d 180 (D. Mass. 2008), <u>Wood</u> v. <u>Penntex Resources LP</u>, 2008 WL 2609319 (S.D. Tex. 2008), and <u>Redish</u> v. <u>Yellow Transportation, Inc.</u>, 2008 WL 2572658 (N.D. Tex. 2008). Based on the above, it is respectfully submitted that the Third Circuit case law prior to <u>Hall St.</u> supra allowing non-statutory grounds to vacate and/or modify an arbitration award, is no longer good law.

## POINT II

## MANIFEST DISREGARD OF LAW/PUBLIC POLICY

Notwithstanding that the U.S. Supreme Court in <u>Hall St.</u> supra has invalidated in FAA proceedings all non-statutory grounds to challenge a final arbitration award, Plaintiffs have advanced a challenge to the Final Award based on the manifest disregard of law and public policy.

## Manifest Disregard of Law

In the Third Circuit, unlike a few other Circuits, there is no bright line definition for the manifest disregard of the law standard for FAA judicial review of arbitration awards. In a dicta passage in <u>News America Pub. Inc.</u> v. <u>Newark Typographic Union</u>, 918 F. 2d 21, 24 (3rd Cir. 1990), the Third Circuit stated, as follows:

> A court does not review the award to ascertain whether the arbitrator has applied the correct principles of law. *See Enterprise Wheel,* 363 U.S. at 598, 80 S. Ct. at 1361. An arbitral award may not be overturned for factual error, *see Misco* 484 U.S. at 38, 108 S. Ct. at 371, or because the court disagrees with the arbitrator's assessment of the credibility of witness, or the weight the arbitrator has given to testimony. (cite omitted).

This Court in <u>New Jersey Building Laborers Statewide Benefit Funds,</u> v. <u>Danmar Contractors,</u> 2007 WL 316577 * 1 (D.N.J. 2007) stated as follows:

> The manifest disregard of the law doctrine is a 'strict standard' in which a 'reviewing court will decline to sustain an award only in the rarest case.' *Newark Morning Ledger Co. v. Newark Typographical Union,* 797 F. 2d 162, 165 (3d Cir. 1986).

Also, see, <u>Bricklayers</u> <u>and</u> <u>Allied</u> <u>Craftworkers</u> <u>Intern.</u> v. <u>Jocanz, Inc.,</u> 2007 WL 1876508 *2 (D.N.J. 2007).

Absent clear Third Circuit case law defining the non-statutory manifest disregard of law doctrine, most circuits follow the Second Circuit which has issued many decisions confirming that judicial review on this ground is a matter of last resort, due to some egregious impropriety on the part of the Panel, and none of the FAA statutory provisions apply. In <u>Wallace</u> v. <u>Buttar</u> 378 F. 3d 182, 189-190 (2nd Cir. 2004), the Second Circuit stated, as follows:

> Our circuit has long held that '[a]n arbitration award may be vacated if it exhibits' a manifest disregard of the law.' *Goldman v. Architectural Iron Co.,* 306 F. 3d 1214, 1216 (2d Cir. 2002) (quoting *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F. 3d 818, 821 (2d Cir. 1997). But we have also been quick to add that 'manifest disregard of law' as applied to review of an arbitral award is a "severely limited" doctrine. *Gov't of India v. Cargill Inc.,* 867 F. 2d 130, 133 (2d Cir. 1989) (internal quotation marks and citation omitted). Indeed, we have recently described it as 'a doctrine of last resort-its use is limited only to those exceedingly rate instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply.' *Duferco,* 333 F. 3d at 389. Accordingly, we have said that the doctrine "gives extreme deference to arbitrators." *DiRussa,* 121 F. 3d at 821.
>
> An arbitral award may be vacated for manifest disregard of the law and if 'a reviewing court ... find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.' *Banco de Seguros del Estado v. Mutual Marine Office, Inc.,* 344 F. 3d 255, 263 (2d Cir. 2003) quoting *Greenberg,* 220 F. 3d at 28). We have emphasized that an arbitral panel's refusal or neglect to apply a governing legal principle 'clearly means more than error or misunderstanding with respect to the law'. *Hoeft v. MVL Group, Inc.,* 343 F. 3d 57, 69 (2d Cir. 2003) (quoting

7

> *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808
> F. 2d 930, 933 (2d Cir., 1986). A federal court cannot
> vacate an arbitral award merely because it is convinced that
> the arbitration panel made the wrong call on the law. On
> the contrary, the award 'should be enforced, despite a
> court's disagreement with it on the merits, if there is a
> *barely colorable justification* for the outcome reached.'
> *Banco de Seguros del Estado,* 344 F. 3d at 260 (emphasis
> added; citation and quotation marks omitted); *see also
> Hoeft,* 343 F. 3d at 70-71 (confirming award and stating
> that it 'is of no consequence' that arbitrator's decision did
> not apply the 'clear majority view' of a certain principle of
> accounting law).

This three-part standard was established in <u>Merrill Lynch, Pierce, Fenner & Smith</u> v.
<u>Bobker</u>, 808 F. 2d 930, 933 (2nd Cir. 1986).

The First element requires that "the error (by the arbitrator) must have been obvious and
capable of being readily and instantly perceived by the average person qualified to serve
as arbitrator", <u>Merrill Lynch</u> supra at 933. The second element requires that "the
governing law alleged to have been ignored by the arbitrator is well defined, explicit, and
clearly applicable", <u>Merrill Lynch</u> supra at 934.  The final element mandates that "the
arbitrator appreciates the existence of a clearly governing legal principle but decides to
ignore or pay no attention", <u>Merrill Lynch</u> supra at 933.

In the Final Award, Mr. Berg denied the Plaintiffs cargo contamination claim and
awarded Defendant Venfleet its counter claims especially for demurrage for the many
Vessel delays, based on a finding of fact that the load port terminal loaded the subject
fuel oil cargo with excessive high water content. Mr. Berg made a ruling of fact. There
was no significant legal issue. Further, the Final Award at pages 16 and 17 cites Plaintiffs
legal arguments, and at pages 26 and 27, Mr. Berg ruled that these legal arguments are

8

not controlling. Therefore, Mr. Berg was fully aware of the legal issues but chose not to accept Plaintiffs legal arguments and he ruled that as a matter of fact, the fuel oil cargo was loaded wet. Mr. Berg did not ignore the applicable maritime law.

**Public Policy**

As an alternative argument to vacate, Plaintiffs Memorandum at page 27, argues that the Court should vacate the Final Award as a matter of public policy supported by the (1) seaworthiness of Vessels, and (2) to protect the environment. These are spurious contentions to challenge a Defendants Motion to Confirm. There was no marine pollution event, and the issue of Vessel seaworthiness was fully addressed in the Final Award. The cargo was loaded on board with excessive water content.

In <u>United Transp. Union Local</u> v. <u>Suburban Transp. Corp.</u>, 51 F. 3d 376, 381-2 (3rd Cir. 1995), the Third Circuit in a collective bargaining labor arbitration dispute confirming an award and rejecting a challenge based on public policy grounds, stated as follows:

> In determining whether a public policy exist, federal courts must use common sense, keeping in mind that a formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective bargaining agreement.' *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.* 484 U.S. 29, 44, 108 S. Ct. 364, 374, 98 L. Ed. 2d 286 (1987).
>
> We have addressed the public policy exception to enforcement of arbitration awards in light *W.R. Grace* and *Misco* in two recent decisions discussed by the parties here: *United States Postal Service v. National Assn of Letter Carriers,* 839 F. 2d 146 (3d Cir. 1988), and *Service Employees,* we explained that '[t]he public policy exception' to the enforcement of arbitration awards 'is slim indeed.' *Service Employees,* 982 F. 2d at 92. The exception is available only when 'the arbitration decision and award

9

create an explicit conflict with an explicit public policy…'
*Id.*

The issues in dispute were Plaintiffs cargo water contamination claim and Defendant charter party counter claims primarily for demurrage. Where are the public policy concerns? There are no public policy issues for a private tanker charter party contract commercial disputes.

## POINT III

### FAA SECTION 10
### CIRCUMSTANCES FOR VACATUR

The FAA at Section 10 lists four (4) circumstances where a Court may grant vacatur. See, Southco supra at 508 to 510. As we review Plaintiffs Memorandum, Plaintiffs have alleged Sub-Section 2 "evident partiality corruption" commonly referred to as bias by Mr. Berg. Also, as per Sub-Section 4, Plaintiffs allege that Mr. Berg issued the Final Award, dated June 5, 2008, for (1) relief not requested by Defendant Vessel Owner, (2) Mr. Berg exceeded his power by awarding to Defendant its attorney's fees/costs, and (3) the Award should not but is issued against both Plaintiffs Andorra and Chemoil. In response, Defendants assert that Plaintiffs have the burden to establish the basis for vacatur, and there is nothing in the arbitration record to support either arbitrator bias and/or that Mr. Berg exceeded his power as authorized by the mutual agreement of the parties and the applicable voyage charter party contract, dated December 19, 2005.

**Arbitrator Bias/Evident Partiality**

General Third Circuit precedent confirms the narrowness of review under the "exceeded powers" clause, and a long-standing rule allowing any doubt concerning the arbitrator's power to be resolved in favor of the arbitrator having the power to make an award,

10

especially when the ground for vacatur is an issue that all parties initially ceded as properly submitted to the Panel.

In a very recent Third Circuit decision, <u>Merrill Lynch Pierce Fenner</u> & <u>Smith</u> v. <u>Clemente</u>, 2008 WL 857756*2 (3rd Cir. 2008), a matter involving a motion to vacate based on a U.S.C. § 10 (a) (2) bias/evident partiality or corruption circumstances, citing <u>Kaplan</u> v. <u>First Options of Chicago, Inc.</u> 19 F. 3d 1503, 1523 n. 30 (3rd Cir. 1994), the Court stated, as follows:

> In demonstrating bias, we require a showing of 'evident partiality,' meaning that 'the challenging party must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration'. *Kaplan Options of Chicago, Inc.,* 19 F. 3d 1503, 1523 n. 30 (3d Cir. 1994) (internal quotation marks and citation omitted). Moreover, 'evident partiality is strong language and requires proof of circumstances powerfully suggestive of bias.' *Id. (*internal quotation marks and citation omitted).

Citing <u>Kaplan</u> supra and other Circuit level decisions including Third Circuit decisions, the District Court for New Jersey in <u>Lourdes Medical Center</u> v. <u>Jneso</u>, 2007 WL 1040961 (D.N.J. 2007) stated, as follows:

> Section 10(a) (2) of the Federal Arbitration Act allows a district court to vacate an arbitration award where 'there was evident partiality or corruption in the arbitrators.' 9 U.S.C. § 10(a) (2). 'Evident partiality' requires more than just an appearance of bias; there must be actual evidence of bias. Indeed, a party asking a court to vacate an arbitration award for 'evident partiality' must show that 'a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration.' *Kaplan v. First Options of Chi., Inc.,* 19 F. 3d 1503, 1523 (3d Cir. 1994) (internal quotations omitted). Thus, 'evident partiality' requires proof of circumstances 'powerfully suggestive of bias.' *Id.* (citations omitted); *see also Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 278 F. 3d 621, 626 (6th Cir. 2002). ('The alleged partiality must be direct, definite, and capable

of demonstration, and the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator.'); *Gianelli Money Purchase Plan and Trust v. ADM Investor Servs., Inc.,* 146 f. 3d 1309, 1312 (11th Cir. 1998) (same); *Employers Ins. Of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 933 F. 2d 1481, 1489 (9th Cir. 1991) (a party 'must demonstrate more than a mere appearance of bias to disqualify an arbitrator').

Against a very high standard for vacating an award based on direct and definite arbitration bias, Plaintiffs have offered nothing in Mr. Berg's conduct and/or rulings that constitute "improper motives" to establish "evident partiality" constituting bias to vacate the Final Award. The parties jointly selected Mr. Berg because of his extensive arbitral experience and reputation. Mr. Berg issued many pre-Award substantive and non-substantive rulings for and against both Plaintiffs and Defendants. See, TEXTOR affidavit, dated August 22, 2008, Docket Item No. 69, Exhibits D, F, G, I, K, N and Q.

Based on the above cited authorities, Plaintiffs have a very heavy burden to demonstrate that Mr. Berg had actual bias against Plaintiffs, Mr. Berg was partial to Defendant Venfleet and Plaintiffs must indicate specific facts that Mr. Berg had unprofessional/improper motives. Where are the specific facts?

As explained in the TEXTOR affidavits dated August 22nd and September 2, 2008, Docket Item Nos. 69, par. nos. 15, 17, 44-45, and 52-53 and to be filed, par. Nos. 41 to 44, respectively, Mr. Berg scheduled all the many hearings requested by the parties, he issued subpoenas for documents and non-witness testimony, and granted to Plaintiffs many requested hearing cancellations and requests for extensions of time to submit evidence and post hearing briefs. At no time did Mr. Berg reject any offer of evidence

12

and/or expert witness reports. Attorney for Plaintiffs requested and Mr. Berg allowed Plaintiffs expert witnesses to issue supplemental expert reports. The Final Award at page 15 confirms that "Chemoil's expert did, in fact, supplement its initial report." As a very senior and well respected SMA arbitrator, Mr. Berg conducted many phone and in person scheduling conferences to allow counsel to do whatever counsel needed to be done.

Further, the parties mutually selected Mr. Berg who is regarded by the New Jersey/New York admiralty bar as one of the leading SMA maritime arbitrators. Mr. Berg's expertise in maritime arbitration goes back more than 30 years. See, <u>In re Transmarine Seaways Corp. of Monrovia v. Marc Rich & Co., A.G.</u>, 480 F.Supp. 352, 358, n.5 (S.D.N.Y. 1979) (CSH) (Mr. Berg among the most frequently selected SMA arbitrators). Also, Mr. Berg issued two (2) written disclosures which both sets of attorneys for Plaintiffs accepted. TEXTOR affidavit, dated August 22, 2008, Docket Item No. 69, par. Nos. 35, 44 and 51.

In conclusion, Plaintiffs contention that Mr. Berg chose to ignore certain offered testimony and/or expert witness report allegations and/or contentions are not FAA sub-Section (a) (2) legal grounds for vacatur. Plaintiffs have offered no evidence of "actual bias" for a reasonable person to conclude that Mr. Berg was partial to Venfleet. The fact that Venfleet succeed with its charter party claims and Mr. Berg denied the Plaintiffs cargo contamination claim, is not evidence of "evident partiality". Losing is not a FAA ground to vacate.

## Panel Exceeded its Authority

Plaintiffs have alleged that the Final Award should be vacated based on 9 U.S.C. § 10 (a)(4) grounds as Mr. Berg was allegedly not authorized to award attorney's fees and

13

costs as the charter party arbitration clause did no expressly allow for attorney's fees and costs, and Defendant never requested interest for late payment of the freight. TEXTOR affidavit, dated September 2, 2008, Docket Item No. to be filed, par. No. 1 (A and C).

As explained in the TEXTOR affidavit dated August 22, 2008, Docket Item No. 69 par. Nos. 17, 19, 31, 37, 43-47, and 49-54, at the early stages of the litigation proceedings and throughout the arbitration proceedings including to the post hearing briefs and attorneys affidavits for fees and costs, the parties reserved for recovery of interest and reimbursement for attorney's fees and costs. Further, the respective party security agreements (LOU's) and Plaintiffs post hearing Main and Reply Briefs, dated February 1st and 29, 2008, clearly confirm the agreement of the parties and the joint instructions/authorization to Mr. Berg to award interest, and reimbursement for attorney's fees and costs. See, TEXTOR affidavit, dated August 22, 2008, Docket Item No. 69, par. Nos. 62 and 63, Exhibits U and V, and TEXTOR affidavit, dated September 2, 2008, Docket Item No. (to be filed), Exhibits Z and AA.

Further, after the first hearing on November 8, 2006, and the late freight payment on November 16, 2006, attorney for Defendants continued the reservation of Defendant Venfleet rights for interest on the late freight ($895,781) payment, and the associated attorney's fees and costs. The interest on the late freight payment claim, substituted to the actual late paid freight claim which interest Mr. Berg awarded for $56,740.92. See, TEXTOR affidavit, dated August 22, 2008, Docket Item No. 69, par. No. 53 and JMT affidavit, dated September 2, 2008, Docket Item No. (to be filed) par. Nos. 16 to 19. Further, for Plaintiff's challenge that Mr. Berg exceeded his powers to award interest,

14

Judge Berman has written that, "… it is well settled that an SMA panel has the discretionary authority to award interest as it deems appropriate." In re IMC Maritime Group v. Russian Farm Community, 2004 WL 2914099, *5 (S.D.N.Y.) (Citing M.V. Michael, S.M.A. Award No. 1168 (Arb. N.Y. 1977) and SMA Rule 30).

In the Third Circuit, one of the leading decisions interpreting FAA Sec. 10(a)(4) and an allegation that the Panel exceeded its power/authority is Major League Umpires Assoc. v. American League of Professional Baseball Clubs, 357 F. 3d 272 (3rd Cir. 2004). The majority of the Court, in relevant part, stated as follows:

> Our role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by an arbitrator.
>
> Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement… When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, fact-finding' does not provide a basis for a reviewing court to refuse to enforce the award.
>
> In reviewing an arbitration award, courts 'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.' *Tanoma Mining Co.,* 896 F. 2d at 747 (citing *United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); *see also Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.,* 868 F. 2d 52, 56 (3d Cir. 1989) (concluding that '[i]t is not this Court's role … to sit as the [arbitration] panel did and reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers.'). Rather, arbitration awards enjoy a strong presumption of correctness that may be overcome only in certain limited circumstances, as described above. Major League Umpires Assoc. supra at 279 and 280.

Also, in much cited language, the Third Circuit in <u>Major League Umpires Assoc.</u> supra at

289 issued certain policy observations regarding motions to vacate and arbitration in

general, and the Court stated, as follows:

> In closing, we cannot help but note that, at their core, many
> of the claims raised by both sides in this litigation amount
> to little more than requests for judicial review of the merits
> of the Award. We reiterate that such review is inimical to
> the public policy underlying the limited role assigned to the
> federal courts in the area of arbitration. *See, Pennsylvania
> Power II,* 276 F. 3d at 178. ('The rationale for the court's
> role is to ensure that the federal policy of encouraging
> arbitration of labor disputes is not subverted by excessive
> court intervention on the merits of an award.'). *Remmey v.
> PaineWebber, Inc.,* 32 F. 3d 143, 146 (4th Cir. 1994).
> ('Limited judicial review is necessary to encourage the use
> of arbitration as an alternative to formal litigation ... A
> policy favoring arbitration would mean little, of course, if
> arbitration were merely the prologue to prolonged
> litigation.').
>
> It is beyond question that the arbitration proceedings are a
> valuable method of dispute resolution, as they offer a
> means by which parties may obtain a binding result within
> a short period of time and at relatively minimal expense.
> *See, e.g. Matteson,* 99 F. 3d at 113 (noting 'the
> congressional policy of promoting speedy, efficient, and
> inexpensive resolution of labor grievances'); *Remmey,* 32
> F. 3d at 146 (noting that "the 'twin goals of arbitration' are
> 'settling disputes efficiently and avoiding long and
> expensive initiation') (quoting *Folkways Music Publishers,
> Inc. v. Weiss,* 989 F. 2d 108, 111 (2d Cir. 1993)). However,
> the possibility of receiving inconsistent or incorrect rulings
> without meaningful appellate review of the merits is one of
> the risks such parties must accept when they choose
> arbitration over litigation. Where, as here, an award that is
> questionable nevertheless falls within the broad discretion
> granted to arbitrators, it must be confirmed.

On May 27, 2008, in <u>Southco</u> v. <u>Reell Precision Manuf. Corp.</u>, 556 F. Supp. 2d 505 (E.D.

Pa. 2008), the District Court for the Eastern District of Pennsylvania issued a lengthy

decision granting a Motion to Confirm and denying a Cross Motion to Vacate based on

FAA Sec. 10 (a)(4) grounds that the AAA Panel allegedly exceeded its powers. The

District Court cited extensive Third Circuit and associated District Court decisions, as

follows:

> The Third Circuit has set forth the analysis that a district
> court must undertake when deciding a challenge to an
> arbitrators' award on the grounds that the arbitrators
> exceeded their powers. *City of Reading,* 1998 WL 151022
> at \*2-3, 1998 U.S. Dist. LEXIS at \*9-10. First, 'the court
> must examine the form of the relief awarded to determine if
> it is rationally derived either from the agreement between
> the parties or form the parties' submissions to the
> arbitrators, and second, the Court must determine whether
> the terms of the relief are rational ...' *Id.,* quoting *Meadows
> Indemnity Co. v. Arkwright Mutual Insurance Co.,* Civ. A.
> No. 88-0600, 1996 WL 557513, \*3, 1996 U.S. Dist. LEXIS
> 14318, \*10 (E.D. Pa. Sept. 30, 1996) and citing *Mutual
> Fire, Marine & Inland Insurance Co. v. Norad Reinsurance
> Co.,* 868 F.2d 52 (3d Cir. 1989) and *Swift Industries, Inc. v.
> Botany Industries, Inc.,* 466 F. 2d 1125, 1131 (3d Cir.
> 1972). As to the terms of the award, a court must affirm the
> award unless they are completely irrational; and thus so
> long as an arbitration award 'draws its essence' from the
> agreement [to arbitrate] it must be upheld because the
> parties to the agreement bargained for a procedure in which
> an arbitrator would interpret the agreement. *Sherrock
> Brothers, Inc. v. DaimlerChrysler Motors Company,* 465 F.
> Supp. 2d 384, 392-393 (M.D. Pa. 2006). For an award to be
> 'completely irrational,' it is not enough that a court find
> that the arbitrators erred, but rather it must find that their
> decision indeed escaped the bounds of rationality.
> *Clarendon National Insurance Co. v. NCO Financial
> Systems, Inc.,* Civ. A. No. 03-69, 2004 WL 838136 at \*2,
> 2004 U.S. Dist. LEXIS 7098 at \*7 (E.D. Pa. April 8, 2004).
> In considering the arbitrator's interpretation of the contract,
> the question becomes whether 'the interpretation can in any
> rational way be derived from the agreement, viewed in the
> light of its language, its context, and nay other indicia of
> the parties' intention.' *Exxon Shipping Co. v. Exxon
> Seamen's Union,* 73 F. 3d 1287, 1295 (3d Cir. 1996).

It has also been said that an arbitrator exceeds his authority only if he rules on questions or matters not before him. Simply reaching a particular result based on his view of the contract and the evidence submitted, even if the court might reach a different result from that same evidence, does not mean that the arbitrator exceeded his authority. *National Clearing Corp. v. Treff,* Civ. A. No. 04-4765, 2005 WL 67075, *4, 2005 U.S. Dist. LEXIS 415, *10 (E.D. Pa. Jan. 10, 2005), citing *Coltec Industries, Inc. v. Elliot Turbocharger Group, Inc.,* Civ. A. No. 99-1400, 1999 WL 695870, *5, 1999 U.S. Dist. LEXIS 13684. *15 (E.D. Pa. Sept. 9, 1999), Southco supra at 511.

With reference to Plaintiffs contentions that Mr. Berg exceeded his power to issue the Final Award against both Plaintiffs, it is respectfully submitted that this is a substantive arbitration issue for which the Court does not have jurisdiction to evaluate for a motion to vacate. Furthermore, as explained in the TEXTOR affidavit, dated September 2, 2008, Docket Item No. (to be filed), par. Nos. 33, then attorneys for Plaintiffs at the first hearing on November 8, 2008, entered an appearance on behalf of both Plaintiffs to defend Defendants request for countersecurity and the three (3) charter party commercial counterclaims. Finally, there is an extensive documented record before Mr. Berg that both Plaintiffs are responsible to satisfy the Final Award. TEXTOR affidavit, dated September 2, 2008, Docket Item No. (to be filed), par. Nos. 34 to 39.

Based on the above cited authorities, Plaintiffs have a very heavy burden to demonstrate that the Final Award was not just erroneous but "completely irrational" meaning the Final Award "escaped the bounds of rationality", and did not comply with the submissions/intentions of the parties. Plaintiffs' lose on all accounts. Mr. Berg issued a lengthy, reasoned and scholarly thirty-three (33) page Final Award "drawing its essence from the voyage charter party contract, dated December 19, 2005, all party commercial

18

charter party claims as submitted and defended, and the joint agreement of the parties to allow for interest, and reimbursement for attorney's fees and costs. There is absolutely no basis for this Court to rule that the Final Award "escaped the bounds of rationality."

## CONCLUSION

Defendants Venfleet *in personam* and the EOS *in rem* respectfully request that the Court grant the Motion to Confirm the Final Arbitration Award, dated June 5, 2008, deny the Plaintiffs Cross Motion to vacate and/or to modify, and the Court enter Judgment against Plaintiffs for $1,986,822.67 with interest at 5% from July 7, 2008 to entry of Judgment and that the Court allow appropriate post Judgment interest, attorney's fees and costs.

Dated: New York, New York
      September 2, 2008

                      CICHANOWICZ, CALLAN, KEANE,
                      VENGROW & TEXTOR, LLP
                      Attorneys for Defendants
                      VENFLEET INC. and M/V EOS

                      By: / s / James M. Textor
                          James M. Textor
                          Patrick Michael DeCharles
                      61 Broadway, Suite 3000
                      New York, New York 10006
                      (212) 344-7042

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury that the following is true and correct:

1.    I am over the age of eighteen years and I am not a party to this action.

2.    On September 2, 2008, I served by ECF and by hand as indicated a true and complete copy of

**DEFENDANTS VENFLEET, INC. IN PERSONAM AND M/V EOS IN REM REPLY MEMORANDUM OF LAW and ATTORNEY AFFIDAVIT OF JAMES M. TEXTOR** dated September 2, 2008 to Wilson, Elser, Moskowitz, Edelman & Dicker, LLP at their indicated office address, as follows:

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP (By Hand)
150 East 42nd Street
New York, New York 10017
Attn: Lawrence Brennan, Esq.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP (ECF)
33 Washington Street
Newark, New Jersey 07102
Attn: Kurt H. Dzugay, Esq.

DATED:    September 2, 2008
New York, New York

Jamie Rodriguez

SWORN TO BEFORE ME
THIS September 2, 2008

Notary Public

PATRICK MICHAEL DE CHARLES II
Notary Public, State of New York
No. 02DE5020061
Qualified in New York County
Commission Expires 8 NOV 2008