UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANDORRA SERVICES, INC. and
CHEMOIL CORP.,

        Plaintiffs,

v.

M/T EOS, et al.

        Defendants.

Civil Action No. 06-373 (PGS)

**OPINION**

This matter comes before the Court on cross-motions to confirm an award of an arbitrator and/or to vacate or modify said award on various grounds pursuant to the Federal Arbitration Act. 9 U.S.C. § 1, et seq. In a nutshell, the controversy concerns the alleged contamination of a boat load of fuel oil during the transportation of said fuel oil from Amuay Bay to Bayonne, New Jersey.

Plaintiff, Chemoil, is engaged in the business of purchasing and selling petroleum products. Its corporate affiliate, Andorra, arranged for the shipment of chartering vessels to transport oil. In this case, Andorra chartered M/T Eos, a tanker, owned by defendant Venfleet. During the voyage, the parties became aware that the M/T Eos had faulty heating coils which were leaking water into the cargo.

By way of background, the industry standard is that fuel oil contains up to one percent of water. Hence, the marketability of the fuel oil may be affected if the heating coils increased the water content of the fuel oil. With regard to this case, the water content at the time of loading and at time of discharge are essential facts to determining damages, if any. Parenthetically, if the water content

is more than one percent, there is a relatively easy fix. That is, high quality fuel oil containing less than one percent water is mixed with the oil containing more than one percent water so that the blend contains no greater than one percent of water.

Upon arrival in Bayonne, the oil was partially discharged into on shore tanks when Chemoil ordered that said operations be stopped, allegedly due to the high water content. At some point, Chemoil commanded that M/T Eos to cease discharge operations, leave port, and wait further instructions at sea. The M/T Eos drifted for about twenty (20) days before the fuel oil was finally discharged. As a result, Chemoil-Andorra seeks damages for the contaminated fuel oil (blending costs) while Venfleet argues that it was inappropriately delayed in discharging the fuel oil and seeks demurrage.

In order to resolve the dispute, the parties agreed to arbitration. A very prominent admiralty arbitrator, Jack Berg ("Arbitrator"), was appointed to hear the case.

After the protracted discovery and hearings, the Arbitrator found that the heating coils of the M/T Eos were faulty, and that the water content rose during voyage. However, the Arbitrator found the increase in water content during voyage was minimal. The Arbitrator found that the water content at the time of loading was 1.5% while it was 1.8% at the time of discharge in Bayonne. The water content of the fuel oil at Amuay Bay was a hotly contested issue because Venfleet disputed the accuracy of Chemoil's testing of the fuel oil. Early in the litigation, Venfleet and Chemoil's counsel agreed to preserve "load port samples." These load port samples were in the custody of Chemoil or its agents. The arbitrator found that the load samples were never produced and that "neither Chemoil nor its affiliated companies took any steps to have PDVSA[1] preserve the load port

---

[1]   PDVSA is Petroleos de Venezuela, the supplier of the cargo aboard the M/T Eos.

shore tank samples, the ship composite sample or any of the individual ship cargo tank samples." (Arbitrator's Opinion at p. 12-13). However, there were load port samples placed on the M/T Eos at the time of embarkation which "somehow disappeared." (Arbitrator's Opinion at 24). Hence, the Arbitrator placed blame on both parties for destruction of this crucial evidence, and determined the water content issue based upon competing inspection reports performed at Amuay Bay by Chemoil and Venfleet, as well as the circumstantial evidence (i.e. at Amuay Bay, the oil had been stored in an open air pit during rainy season prior to loading). The Arbitrator further found that the .3% increase in water content during voyage was relatively small compared to the 1.5% water content at the time of loading. The Arbitrator stated that "the overwhelming bulk of the problem was the excessive quantity of water" in the fuel oil at the time of loading. (Arbitrator's Opinion at 28). As such, the Arbitrator disallowed Chemoil's claim. With regard to demurrage, Chemoil posited that the reason for the delay in discharge was due to the need to acquire a purer fuel oil to blend with the fuel oil in question.[2] The Arbitrator found that the need for such blending was not the fault of Venfleet but was instead due to the inferior quality of the fuel oil at the time of loading, and as a result, under the terms of the charter party, demurrage was warranted. In addition, the Arbitrator awarded interest and legal fees.

*Federal Arbitration Act (FAA)*

Generally, the FAA "provides for expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall St. Assoc. LLC v. Mattel, Inc.* 128 S. Ct. 1396, 1400 (2008). Since arbitration's virtue is "resolving disputes straightaway," the Court's scope of review is extremely

---

[2] The Arbitrator suggests, without finding, that it may have been more than coincidence that Chemoil's order to halt discharging was related to a sharp spike in fuel oil prices, and by storing the oil on board, Chemoil was increasing its profits by taking advantage of the spike.

deferential. *Hall*, 128 S. Ct. at 1405; *see also Merrill Lynch Pierce, Fenner & Smith, Inc. v. Clemente*, 272 F. App'x 174, 176 (3d Cir. 2008); *Dlukor v. Stearberg*, 321 F. 3d 365, 369 (3d Cir. 2003). The scope of review is so narrow that unless "dishonesty is alleged, an arbitrator's improvident, even silly, fact finding does not provide a basis" to set aside an award. *Gateway Funding v. Field*, 2008 WL 2758877 *6 (E.D. Pa. 2008) (quoting *United Paperworkers Int'l v. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 39 (1987)). Since the Supreme Court has recently held that FAA §§ 9-11 provide the "exclusive grounds for expedited vacatur and modification," *Hall*, 128 S. Ct. at 1403, the Court limits its review to those statutory grounds. To the extent that Chemoil argues that the award should be vacated upon grounds approved by the Third Circuit prior to *Hall*, the Court declines to entertain same. While the Third Circuit has not elaborated on *Hall St. Assoc.* to date, there is at least one District Court case within this Circuit which is on point. In *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 509-10 (E.D. Pa. 2008), Judge Jayer opined:

> An arbitration award is generally presumed valid. Review of arbitration awards is extremely deferential and vacatur is appropriate only in the exceedingly narrow and exclusive circumstances delineated in Sections 10 and 11. Likewise, an arbitrator's improvident, even silly, fact-finding does not provide a basis for a reviewing court to refuse to enforce the award. This is because the Court's role in reviewing the outcome of arbitration proceedings is not to correct factual or legal errors made by an arbitrator and courts should not re-weigh the evidence to decide whether to vacate the award. In other words, *the court must focus on the arbiter and the contract and not on the facts underlying the dispute.*

(Emphasis added) (internal citations and quotations omitted).

Similar to Southco, and based upon *Hall*, the Court limits its review to the statutory grounds set forth in §§10 and 11 of the FAA.

Pursuant to §10 of the FAA, Plaintiff argues that the Arbitrator was biased against it. Bias may be found when there is evident partiality – "meaning that 'the challenging party must show a

reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration." *Merrill Lynch*, 272 F. App'x at 176 (quoting *Kaplan v. First Options of Chicago, Inc.* 19 F.3d 1503, 1523 n.3 (3d Cir. 1994).

In this case, Chemoil asserts that the Arbitrator's decision-making about the ongoing discovery dispute and scheduling were so one-sided that any reasonable person would conclude that the Arbitrator was biased. In particular, Chemoil points to a dispute regarding SAAB radar system records. Evidently, Venfleet withheld the records of the vessel's SAAB radar system until the eve before Plaintiff's expert was to testify. The SAAB radar system remotely records the level of liquids in the cargo control room. Plaintiff requested an adjournment of the hearing so that his expert could evaluate these documents. The Arbitrator denied the request. In his opinion, the Arbitrator considered the SAAB radar system noting that its readouts were "available . . . to all inspectors and surveyors." (Arbitrator Opinion at p. 7). He wrote:

> The vessel has two closed cargo measurement systems because the tanks are under IGS pressure and cannot be hand gauged through open ullage ports. One of the closed systems is a SAAB radar system which records the level of liquids in the cargo control room. The third party inspectors and surveyors are able to obtain necessary cargo measurements and samples through an on deck vapor lock chamber at each cargo tank, mainly on the port side, using their own industry standard MMC devices or the vessel's sMMC equipment.
>
> All cargo loading and discharge operations are controlled from the cargo control room. The remote SAAB gauges, trim and list gauges, digital draft readings, etc. are available for readouts by all inspectors and surveyors.

Id. Contrary to Plaintiff's contention, the Arbitrator obviously did not believe Plaintiff was prejudiced or surprised because the SAAB records were available to all, and it is a redundant system to monitor cargo loads. This incident does not support a showing of evident partiality.

*Interest*

Plaintiff contends that the Arbitrator's award of prejudgment interest was beyond his scope of authority. The Arbitrator allowed prejudgment interest on "the late freight payment" ($56,740.92) and for "demurrage and shifting" ($203,431.03). In this case, Plaintiff did not pay the freight bill until 9.5 months after it was due without "any rational explanation." (Arbitrator's Opinion at 31). The Arbitrator allowed interest on demurrage because Chemoil did not justify its decision to halt discharge of the fuel oil for about three weeks. The Arbitrator noted that prejudgment interest is ordinarily granted in an admiralty matter. He stated:

> The law in this Circuit dictates that there be an award of prejudgment interest to the prevailing party in a maritime case absent extraordinary circumstances. The rationale underlying this policy is that the injured part should be made whole by compensating it for the time it was deprived of the use of its property. Both parties have demanded interest on their respective claims.

The Plaintiffs also argue that the pre and post award interest allowed by the Arbitrator is excessive because it exceeds the percentage allowed by statute. 28 U.S.C. §1961. Under the Arbitrator's award, the interest was calculated as to "average prime interest rate during the relevant . . . period." Although it is higher than allowed pursuant to statute, it is not arbitrary or completely irrational. *Southco,* 556 F. Supp. at 511 (E.D. Pa. 2008).

<u>Attorney Fees</u>

The Plaintiff argues that the award of attorney fees to Venfleet is improper because there is no statutory authority or contractual argument which imposes payment of fees upon the losing party. The Arbitrator seemingly agrees with Chemoil's statement of the law, but finds there is an exception

to that rule. According to the Arbitrator, where both parties to an arbitration seeks attorneys fees, then the arbitrator may award them. The Arbitrator wrote:

> It is not entirely clear whether arbitrators are empowered to award counsel fees when there is no specific reference to them in the arbitration clause. However, if both parties to the proceeding request an award of attorneys fees, the arbitrator is empowered to do so. Both sides have demanded reimbursement for counsel fees and costs. (Arbitrator's Opinion at 32).

It is clear that both parties sought an award of counsel fees. It is difficult to reconcile Chemoil's request to vacate the award when it argued in favor of such an award to the prevailing party throughout the proceeding. The Court must affirm an award as long as the award "draws its essence" from the bargained for procedure unless it is "completely irrational," *Southco*, 556 F. Supp. 2d at 511 (internal quotation marks omitted). Since there is nothing that contradicts the Arbitrator's practice of awarding fees when both parties request same, this Court will not upset the award.

*Proper Corporate Defendant*

Plaintiff contends that the Arbitrator exceeded his authority by imposing liability upon both Chemoil and Andorra. Since Andorra is the entity which entered the charter party with Venfleet, and no theory has been advanced to pierce the corporate veil, Plaintiff argue the award against Chemoil can not stand.

The fallacy in this argument is that Plaintiff did not press this distinction at any time during the controversy. For example, in the original complaint, Andorra and Chemoil are each a named plaintiff; but throughout the Complaint they are referred to collectively as plaintiffs with the same cause of action and seeking the same relief. Moreover, in its opposition brief, Plaintiff refer to Andorra as "vessel-chartering 'sister' affiliate of Chemoil," and the Arbitrator's award does not focus on the issue. It is evident that the Arbitrator considered their conduct as being part of an

integrated entity. The Arbitrary carefully enumerated Plaintiff's contentions in his award. (Opinion at 16-17). None of the contentions mention that corporate liability is contested on Venfleet's counterclaim. Apparently, the issue was not raised to the Arbitrator. Suffice it to say, there are insufficient facts upon which to upset this ruling.

*Conclusion*

Based upon the well reasoned opinion of the Arbitrator and the recent Supreme Court's decision further narrowing the scope of review, the motion to confirm is granted, and the motion to vacate is denied.

11-19-08

_____
PETER G. SHERIDAN, U.S.D.J.